UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANICE BECKER,

                                    Plaintiff,

            v.

WILLAMETTE COMMUNITY BANK,

                                    Defendant.

6:12-cv-01427-TC

AMENDED ORDER

COFFIN, Magistrate Judge:

Before the court are various motions to compel, motions for protective orders, and a motion to quash a subpoena.  In addition, plaintiff in her briefing (Response to Defendant's Supplemental Memorandum, ECF #128) raises the issue of whether defendant should be required to waive its attorney-client privilege during discovery or strike a portion of its answer wherein it denies a central allegation of plaintiff's case, i.e., that she provided information in a prior lawsuit against the Bank that was supportive of the plaintiff in that action.

BACKGROUND

A central issue in this lawsuit is whether defendant Willamette Community Bank retaliated against plaintiff Janice Becker because she assisted a former supervisor (Maureen Connolly) in her

Page 1 - AMENDED ORDER

wrongful termination/retaliation civil lawsuit against the Bank.  Becker alleges in her complaint that after

> the filing of Connolly's lawsuit, an attorney representing Willamette Community Bank interviewed plaintiff on three separate occasions in 2011 in connection with the Connolly lawsuit. Plaintiff provided information that was supportive of Ms. Connolly's case.

Complaint (#1) at ¶ 16.

The Bank, asserting that its attorney-client privilege applied to the interviews with plaintiff, moved to strike this paragraph from the pleadings.  This court denied the motion, ruling that while the Bank had a legitimate expectation of confidentiality vis-a-vis third parties, there was nothing secret between plaintiff and the attorney regarding the contents of the communications.  In addition to denying the Bank's motion to strike, I also denied its motion for a protective order precluding discovery and disclosure of information communicated between plaintiff and the Bank's attorney during those interviews.  Order of February 14, 2013 (ECF #26).

The court's ruling has been followed by a series of discovery disputes between the parties as plaintiff endeavors to probe for information about whether officers and other Bank personnel had knowledge of Becker's "supportive" position of Connolly in her lawsuit against the Bank, while the Bank vigorously asserts the attorney-client privilege and work-product doctrine to block any such inquiries.

As noted in my above order (ECF #26), the parameters of the corporate attorney-client privilege do not neatly fit within the traditional rationale and construct of the privilege.  This case starkly illustrates the point.  Plaintiff was "represented" by corporate counsel (and was thus her client) when she was being interviewed about the Connolly litigation, but now finds herself conflicted with that same counsel (Caroline Guest) in her own lawsuit against the Bank in which she

alleges that the Bank retaliated against her because of the content of those interviews.  Unlike the traditional attorney-client relationship, plaintiff cannot simply waive the privilege and examine counsel regarding the communications at issue because she is not the corporate officer vested with such authority.  Thus, the attorney is cast into a dual role - representing a corporate officer as she undertakes to interview her in a lawsuit against the corporation and then reporting the results of those interviews to higher-ups in the corporate chain who had the power to promote, demote, or fire the interviewee.  To state the obvious, the corporation places its employees and counsel in a potentially adversarial situation fraught with delicate legal issues.  See, e.g., 24 Fed. Prac. & Proc. Evid. § 5476 (1st ed.) Client-"Corporation" at p. 4. (positing the question of whether the corporation "can feed an employee to the wolves" by claiming corporate privilege).

The essential question presented here is whether the Bank can factor the information provided by plaintiff to corporate counsel into its decision regarding her employment and insulate itself from scrutiny through the application of the attorney-client privilege and the work product doctrine.

The breadth of the Bank's position is illustrated by its efforts to preclude the plaintiff herself from disclosing her communications with corporate counsel during the interviews.  Had this application of the privilege been adopted by the court, plaintiff, as well as any other employee in similar circumstances, would be unable to pursue a retaliation claim because she would be completely barred from proving the conduct or speech that allegedly triggered the retaliation.

Thus plaintiff, being privy to her communications with Ms. Guest, may freely recount and testify about the content of her interviews.  The Bank, however, retains its attorney-client privilege in communications between other corporate officers and counsel regarding those interviews and other matters so long as those communications fall within the parameters of the privilege:

Page 3 - AMENDED ORDER

The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice. Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication. United States v. Bauer, 132 F.3d 504, 507 (9th Cir.1997). The attorney-client privilege exists where: "(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." Graf, 610 F.3d at 1156.

United States v. Richey , 632 F.3d 559, 566 (9th Cir. 2011).

<div align="center">DISCOVERY ISSUES</div>

1.      Instructions by Defense Counsel to Bank Employees at Commencement of Depositions

Prior to the depositions of certain Bank employees, defense counsel gave the following instructions:

> This witness has been instructed, as well as the other witnesses - or witness appearing today, that if they are asked a question about their knowledge of somebody who told them something, whether they have learned something or plainly about information that may have been communicated to them, that if their only source is an attorney/client privileged communication, the witness is to answer no to that question.

Deposition of Keith Lockhaven at p. 3 (attached as Exhibit B at p. 1 to Plaintiff's Memorandum in support of Motion to Compel (ECF #96)).

The instruction is improper in that it seeks to elicit false testimony from witnesses. Whatever the scope of the attorney-client privilege may be, it does not authorize untrue statements as a mechanism for preserving confidentiality. If a witness, for example, had knowledge that Ms. Becker provided information that was supportive of Connolly in her lawsuit against the Bank, and if that knowledge was derived from confidential communications with the Bank's counsel, the witnesses should be instructed to assert the privilege, not falsely deny having such knowledge.

As for the Bank's concern that an assertion of the privilege would be tantamount to an admission of knowledge per the attorney's communication, that is an issue that can be addressed at the trial of the case, but the solution to the Bank's dilemma is decidedly not to be found in false testimony.[1]  Furthermore, any inference that would be supplied by the witness' assertion of the attorney-client privilege is equally supplied, if not more so, by the testimony of plaintiff regarding the communications between her and corporate counsel.  Even if the Bank chooses not to waive the privilege and address the matter through testimony of Ms. Guest and Bank officers, an inference could be drawn by the fact-finders that counsel would necessarily have reported the contents of the Becker interviews to the appropriate corporate officials having responsibility with regard to the Connolly lawsuit.  As any attorney can attest, a lawyer would have an obligation to inform the client about the statements of a potential witness in the case.

    2.       Joan Reukauf Deposition

Joan Reukauf was the Bank's Senior Vice President and plaintiff's supervisor at the Bank, and was allegedly a key actor in decisions to demote, discipline, and to terminate Becker's employment.  She testified that after Connolly was terminated by the Bank, Bank President David Wood supervised Becker for several months.  Connolly's subsequent lawsuit against the Bank largely concerned allegations against Wood.  In October 2010, Wood directed Reukauf to take over Becker's supervision "because of some circumstances that had hatched ..."  Reukauf Depo. (ECF #125) at p. 101, Lines 23-25.

---

[1] I note that the Bank's answer to plaintiff's complaint in which the Bank denies that Becker provided information favorable to Connolly in her lawsuit seemingly mirrors the notion that knowledge derived from privileged communications is not knowledge at all.

She further testified that she undertook to perform her "due diligence" with respect to supervising Becker, and thus reviewed her personnel file, discovering that no evaluation of Becker had been done in 2010.  Reukauf asked Wood about his evaluations of Becker and was directed by him to obtain the information from Ms. Guest.

All further inquiries of Reukauf regarding what she learned from Guest on the subject of Becker's performance and evaluation was objected to on the basis of the attorney-client privilege.

In the court's view, the Bank has failed to meet its burden of showing that communications between Reukauf and Guest on the subject of Becker's performance were protected by the attorney-client privilege.  Although Reukauf testified at her deposition that when she contacted counsel (regarding plaintiff's 2010 performance review) she was "speaking with counsel in her capacity as representing the Bank in the Connolly case" and/or "because Ms. Guest was engaged as a general employment counsel," this does not explain the nature of any legal advice she was seeking.  The context and chronology of events suggests that she was not seeking legal advice of any kind, but a factual evaluation of Becker's performance for the period in question as part of her "due diligence." Thus Reukauf initially went to Wood, who is not an attorney, for Becker's performance review (not legal advice), and only contacted Guest at Wood's direction.  While a corporation is certainly free to seek business advice from counsel, business advice does not become legal advice simply because it is rendered by counsel.  See McCormick on Evidence, 6th Ed., Vol. 1, § 88: "where one consults an attorney not as a lawyer but ... as a business advisor ... the consultation is not professional nor the statement privileged."  A performance review is not "legal advice of any kind."  It is a quintessential

business function, and plaintiff is entitled to probe the factual underpinnings of the Bank's evaluation of her performance.[2]

3.    Questions Regarding Reukauf's Gathering of Information and Documents in Connection with the Connolly Litigation

The Bank objected to a line of questions of Reukauf by plaintiff's counsel at her deposition which regarded the subject matter of documents which Reukauf gathered in response to discovery requests in the Connolly litigation. The Bank contends that Reukauf cannot describe the specific scope of the documents she reviewed or gathered without revealing Guest's "legal advice and impressions."

Apparently the context of this dispute is that Reukauf professes little knowledge of the Connolly litigation and that she "just wasn't really involved" in it, and counsel wants to probe the extent of her involvement and knowledge.

The court disagrees with the Bank that Ms. Reukauf's gathering of documents pursuant to a discovery request by Connolly in her litigation against the Bank is protected by the Bank's attorney-client privilege. So long as the questioning is limited to documents gathered pursuant to Connolly's discovery requests, such reveals nothing about the "legal advice and impressions" of the Bank's counsel, who was simply channeling the requests of Connolly's counsel. Thus any claim of privilege regarding questions directed at documents gathered by Reukauf in response to Connolly's

---

[2]There is a fundamental difference between counsel informing corporate officers that "I interviewed employee Smith and he will give favorable testimony for the plaintiff in her lawsuit against the Company so we should consider settling the case" and counsel informing officers in connection with the Company's performance evaluation of Smith that the employee would have given testimony that was detrimental to the Company. The former is legal advice and is privileged. The latter (without more of a showing) is not legal advice and is beyond the scope and purpose of the privilege. The Bank has failed to meet the burden here of showing that funneling the Becker performance evaluation through Guest implicated "legal advice."

discovery request is rejected. Any questioning, however, that seeks to probe what documents Reukauf gathered at Guest's request for the Bank's use in the Connolly litigation (and not for production to Connolly) would be subject to the attorney-client privilege.

4. E-Mail from Reukauf to Guest on June 24, 2013

Defendant moves for a protective order requiring plaintiff to return this e-mail on the basis that it is a privileged communication that was inadvertently disclosed by the Bank during discovery. In its briefing, defendant describes the contents of this document as not being "particularly germane or useful" and that neither party "would have reason to use [it] as evidence in support of their case." Thus the concern of the Bank seems to be that plaintiff will use the production of this document "to argue that a broad subject-matter waiver has occurred in attempt to breach the [attorney-client] privilege completely and gain access to all advice counsel has provided to Bank in relation to plaintiff ..." (ECF #99 at p. 9).

This document was produced on September 18, 2013 in response to plaintiff's request for a certified copy of her personnel file together with all personnel records that were used in making the decision to terminate Becker's employment with the Bank on June 26, 2013. On August 30, 2013, defendant forwarded 130 pages of documents under a cover letter stating that "attached is a complete, certified copy of Ms. Becker's personnel file." On September 18, 2013, defense counsel forwarded one additional document (the e-mail at issue) under a cover letter stating:

> I located this document under others on my desk yesterday. I inadvertently omitted it from the copy of Ms. Becker's personnel file I sent to you on August 30. This should have been part of the file. My apologies for the oversight.

On December 3, 2013, defendant requested the return or destruction of the e-mail, claiming that it was privileged and was inadvertently disclosed.

I find that defendant waived any privilege that applies to the document when the Bank voluntarily made it part of plaintiff's personnel record in the face of state law mandating disclosure of personnel records to employees on request. O.R.S. § 652.750. Although defense counsel at oral argument suggested that the document may not have been inserted into a hard copy or "physical personnel file," she acknowledged that the statute "includes any documents that the employer relied on in making decisions to discipline, promote, demote, terminate, those sorts of things." Transcript of Proceedings held on April 30, 2014 (ECF #130) at pp. 51-52. Thus the document was part of Becker's "virtual" personnel file, and it is inconsequential that it was not hard-copied into a physical file. Thus I find that the Bank waived any privileges that attached to this document by including it in her personnel records.

Moreover, I cannot find that its disclosure was "inadvertent" in any realistic sense of that term. Defense counsel obviously reviewed its contents and even apologized for "inadvertently" failing to disclose it with the personnel records in her September 18, 2013 letter. Rather than being the type of inadvertent disclosure that merits the protective order sought by the Bank, the document was clearly intentionally transmitted by the Bank pursuant to plaintiff's request for her personnel records and now, as an afterthought, the defendant has decided to assert the privilege. The assertion comes too late. The defendant's motion for a protective order regarding this e-mail is denied. I do not find, however, that this limited waiver of the privilege regarding this document constitutes a general waiver of the Bank's attorney-client privilege in this litigation.

5.      Motion to Quash Subpoena to Jill Goldsmith

The Bank moves to quash plaintiff's subpoena of Jill Goldsmith (seeking the production of her entire report) on the asserted basis that Rick Smith, a Bank board member, hired Goldsmith, an attorney, to conduct an independent investigation into workplace complaints made by then employee

Janice Becker and did so with an understanding that an attorney-client relationship was created. The Bank had previously produced the Goldsmith report to plaintiff in discovery, with the exception of a "privileged e-mail" from Reukauf to Wood which apparently discusses legal advise provided to the Bank by Guest. It seeks to quash the subpoena for the "privileged e-mail document" on the basis of the attorney-client privilege and work-product doctrine.

The Bank, however, fails to sustain its burden of establishing that Goldsmith was hired in her capacity as an attorney for purposes of giving legal advice to the Bank. To the contrary, the evidence conclusively demonstrates that Goldsmith was hired as a fact-finder, not in her capacity as an attorney.

Thus Goldsmith herself testified as to her understanding that she was hired as a fact-finder and was not representing the Bank as an attorney. Her engagement letter from the Bank states that she was "engaged as an independent contractor for the purpose of providing an independent review of certain factual allegations." She was not hired by Ms. Guest, under Ms. Guest's attorney-client relationship with the Bank. In fact, during Goldsmith's investigation, Guest took the position that since Goldsmith was hired as an "independent contractor" she could interview Becker without the consent of her attorney (Stephen Brischetto). Smith's declaration is the sole support for the Bank's claim that it had an attorney-client relationship with Goldsmith, yet he admitted that he had no recollection of specifically discussing with Goldsmith that she was acting as an attorney and it was simply his "presumption" that she would be acting in that capacity. Smith's understanding of Goldsmith's role was further contradicted by the fact he refused to produce Guest's notes of her interviews with Becker when Goldsmith requested them, explaining that the Bank did not want to waive the attorney-client privilege. Had Smith actually viewed Goldsmith as the Bank's attorney,

he would have had no reason to be concerned that producing Guest's notes to her would have waived the privilege.

What remains, then, is the question whether the "privileged e-mail" document can be withheld on the basis of the work-product doctrine.  Much of the Bank's argument in this regard is founded on the notion that Goldsmith had an attorney-client relationship  with the Bank, which I have rejected.  Thus the Bank is confronted with the issue of whether it can assert a work-product privilege to protect the confidentiality of a document it voluntarily released to a third party independent fact-investigator.  As the Bank acknowledges, a voluntary waiver of the attorney-client privilege or work-product protection occurs when a party discloses protected information to a third party who is not bound to maintain its confidence.  Bittaker v Woodford, 331 F.3d 715, 719-20 (9th Cir. 2003).  Moreover, application of Fed. R. Ev. 502 also supports a finding of waiver of confidentiality of the document, as the Goldsmith report and exhibits attached thereto (sans the "privileged e-mail") have been disclosed to plaintiff in discovery.  Under Fed. R. Ev. 502(a): a party's waiver extends to an undisclosed communication if (1) the waiver is intentional: (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.

In Weil v. Investment/Indicators, Research and Management, Inc., 647 F.2d 18, 24 (9th Cir. 1981) the Ninth Circuit cited with approval the following comments from Wigmore:

> (W)hen (the privilege holder's) conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or disclose, but after a certain point his election must remain final.

Page 11 - AMENDED ORDER

I find that Goldsmith relied upon the exhibits attached to her report in reaching her conclusions and that the undisclosed exhibit concerns the same subject matter and thus in fairness should be considered together with the other exhibits.

The motion to quash is thus denied.[3]

6.      Motion to Compel Deposition Testimony by Plaintiff

The Bank has filed a motion to compel deposition testimony of plaintiff on the subject of whether she had communications with her current counsel (Brischetto) prior to being demoted by the Bank and retaining him as counsel.  There is a dispute regarding whether plaintiff has already answered that question at her deposition by responding "I don't recall."  The Bank contends that this answer was ambiguous because of her attorney's instruction not to answer the question.  Accordingly, the plaintiff is ordered to submit a declaration clarifying her answer.  The court will then issue a supplemental order regarding this motion.

7.      Plaintiff's Motion to Require the Bank to Waive the Attorney-Client Privilege Regarding Becker Interviews or, in the Alternative, to Strike a Portion of its Answer

Given numerous discovery disputes that have arisen in this case, the discovery deadlines have been extended to October 31, 2014.  The Bank has been ordered to inform the plaintiff and the court at least 30 days prior to the deadline regarding its decision on whether it will waive the privilege or continue to assert it at trial.  If the Bank elects to waive the privilege, this motion will be moot and appropriate depositions can be scheduled promptly before the deadline.  If the Bank decides not to waive the privilege any motion to strike can be renewed at that time.

---

[3]To the extent that the report contains any information about the results of an FDIC examination, defendant may redact such information from the copies produced.

Page 12 - AMENDED ORDER

<u>CONCLUSION</u>

For the reasons stated above and for the reasons noted at the oral argument held on April 30, 2014, the court disposes of the pending motions as follows:  plaintiff's motion to quash (ECF #59) is denied; defendant's motion to compel deposition testimony (ECF #64) is granted to the extent plaintiff shall provide the declaration noted above; defendant's motion to quash and for protective order (ECF #79) is denied except with respect to any FDIC exam information; Plaintiff's motion to compel and for protective order (ECF #94) is granted to the extent noted above; and Defendant's motion for a protective order (ECF #98) is denied.

DATED this 30th day of June  2014.

 s/Thomas M. Coffin _____
THOMAS M. COFFIN
United States Magistrate Judge

Page 13 - AMENDED ORDER